UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK MANSA,                                 :
    Plaintiff,                              :
                                            :         Docket No. 3:16-cv-00644-VAB
v.                                          :
                                            :
                                            :
UNITED STATES                               :
    Defendant.                              :         **March 30, 2017**


**RULING ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Mark Mansa, brings this action against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), *et. seq.*, alleging negligence on the part of several officials of the Bureau of Prisons ("BOP") acting in their official capacities. *See* Compl., ECF No. 1, ¶ 1. Defendant has moved to dismiss the Complaint under Rule 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction, as well as Rule 12(b)(6) on the grounds that the Complaint fails to state a claim upon which relief can be granted. *See* Def.'s Mot., ECF No. 9. For the reasons that follow, Defendant's motion is DENIED.

**I.     Factual Allegations[1]**

On December 30, 2011, Mr. Mansa alleges that he pled guilty to one count of possession with intent to distribute 100 kilograms or more of marijuana in violation of federal drug laws. Compl. ¶ 3. On June 1, 2012, a federal judge sentenced him to a term of imprisonment of 46 months,

---

[1]The Court notes that Defendant has cited facts that Mr. Mansa did not mention in the Complaint, citing to a separate motion to dismiss, which it filed regarding Mr. Mansa's petition for a writ of habeas corpus under 28 U.S.C. § 2241, then pending before the District of Rhode Island. *See* Def.'s Mem., n. 2. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). While courts "routinely take judicial notice of documents filed in other courts," the Court must notice these "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* at 774.

which he began serving on July 6, 2016. *Id.* Mr. Mansa allegedly participated in the Residential Drug Abuse Program ("RDAP") while incarcerated. *Id.* at ¶ 4. On or about May 6, 2014, prison officials transferred Mr. Mansa to a Residential Reentry Center ("RRC") in Waterbury, Connecticut ("the Chase Center") because Mr. Mansa had completed the residential phase of the RDAP program. *Id.* As an RDAP participant, Mr. Mansa was required to provide the Chase Center with a urine sample for drug testing approximately two times per week. *Id.* at ¶ 5.

On or about May 20, 2014, Mr. Mansa claims that he began working at Cameron's Deli in Cross River, New York. *Id.* at ¶ 6. He alleges that his employer gave him a daily food allowance to purchase items from Cameron's, which he often used to purchase sandwiches and rolls, all of which contained poppy seeds. *Id.* at ¶ 7. On July 7, 2014, Mr. Mansa allegedly informed the Chase Center that he had been consuming poppy seeds. *Id.* at ¶ 8. A Chase Center employee allegedly noted this in Mr. Mansa's file. *Id.*

In June 2014, the Chase Center notified Mr. Mansa that he had produced a urine sample containing morphine. Compl. ¶ 9. On July 1, 2014, prison officials allegedly notified Mr. Mansa that he would be remanded into custody because of the test results. *Id.* at ¶ 12. The next day, Mr. Mansa alleges that he submitted hundreds of hairs for gas chromatography/mass spectrometry testing, which allegedly resulted in a negative determination "for all five major drug classes." *Id.* at ¶ 13. Nevertheless, prison officials transferred Mr. Mansa to Donald W. Wyatt Detention Center in Central Falls, Rhode Island ("Wyatt"). *Id.* at ¶ 14. During his subsequent stay at Wyatt, which allegedly lasted several months, Mr. Mansa "suffered physical pain and discomfort and loss of freedom as a direct and proximate consequence of his imprisonment by the defendant." *Id.* at ¶ 15.

Mr. Mansa alleges that an administrative claim "was served upon the defendant's duly authorized representatives on or about December 21, 2015, which was within two years of the events alleged." Compl. ¶ 16. He alleges that Defendants denied the claim by letter dated January 4, 2016. *Id.* Several months later, Mr. Mansa filed this Complaint, alleging negligence under the FTCA.

## II.     Standard of Review

Defendant seeks to dismiss Mr. Mansa's Complaint under both Rule 12(b)(1) and Rule 12(b)(6), making two standards of review applicable.

First, when a court reviews a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). The burden of proving subject matter jurisdiction by a preponderance of the evidence is on the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings" to resolve the jurisdictional issue, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing K*amen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)), but a court "may not rely on conclusory or hearsay statements contained in the affidavits." *Attica Cent. Sch.*, 386 F.3d at 110.

Second, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

When determining whether the plaintiff has stated a plausible claim for relief, the Court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court must accept the

allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

### III. Discussion

Defendant seeks to dismiss Mr. Mansa's Complaint in its entirety under two provisions of Rule 12(b).  Defendant invokes Rule 12(b)(1), claiming that the Court does not have jurisdiction over Mr. Mansa's Complaint because it alleges false imprisonment and seeks to challenge the BOP's "discretionary decisions," neither of which are actionable under the FTCA.  In the alternative, Defendant argues that Mr. Mansa fails to state a claim under Rule 12(b)(6) for the same reasons.  The Court disagrees with both arguments.

#### a. Dismissal under Rule 12(b)(1)

##### 1. *False Imprisonment*

Defendant claims that Mr. Mansa's case should be dismissed because the Court "lacks subject matter jurisdiction [over Mr. Mansa's] claim for false imprisonment."  In his opposition to the motion to dismiss, Mr. Mansa responds that his case is not "a false imprisonment case, nor is it a claim for a violation of constitutional rights." Pl.'s Opp. Mem., 4.  He instead insists that he claims "common law negligence," arguing that prison officials were negligent in "ignoring the facts in [their] own files to the physical detriment" of Mr. Mansa.  *Id.*

While Mr. Mansa's original Complaint mentions false imprisonment, the Court construes his claims as claims for negligence.  As the Second Circuit has observed, a party's response to a motion to dismiss "generally reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others." *Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (dismissing several claims as a result of the plaintiff's lack of response).  Courts have presumed that plaintiffs have "abandoned" their claims when they do not specifically oppose a motion to dismiss them. *See, e.g. Hanig v. Yorktown Central School District*, 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[P]laintiff appears to have abandoned her § 1983 claim under the Fourteenth Amendment, as she failed to

oppose dismissal of that claim in her Memorandum of Law in Opposition to the present motion."); *Karout v. McBride*, No. 3:11CV1148 JBA, 2012 WL 4344314, at *1 (D. Conn. Sept. 21, 2012) (deeming certain claims "abandoned" because they were not addressed in the plaintiff's opposition). In this case, the Court need not presume abandonment because Mr. Mansa affirmatively states it by instructing the court to construe his Complaint as one for negligence. Accordingly, any additional claims that were implied in his Complaint should, given the clear language of his opposition memo, be considered abandoned.

### 2. *Negligence*

Defendant argues that Mr. Mansa's negligence claim is not "actionable under the FTCA" because it is based on the misapplication of BOP regulations and has no private analogue. Def.'s Mot., 10. The Court disagrees.

The United States, "as sovereign, is immune from suit" unless "it consents to be sued," and the terms of its consent to be sued define the Court's jurisdiction to hear the suit." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). The FTCA waives the sovereign immunity of the United States so that it can be sued for "injury or loss of property ... caused by the negligent or wrongful act or omission of any [of its] employee[s] ... acting within the scope of his ... employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). For liability to arise under the FTCA, therefore, "a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action. *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (citing *C.P. Chemical v. United States*, 810 F.2d 34, 37 (2d Cir.1987)).

The FTCA's general waiver is limited by thirteen exceptions to liability, codified in 28 U.S.C. § 2680. One of these exceptions, the "discretionary function exception," provides that the

United States remains immune from suit where a claim is based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 29 U.S.C. § 2680(a). "[T]he discretionary function exception was intended to avoid any possibility that the FTCA may be construed to authorize damage suits against the Government growing out of a legally authorized activity, merely because the same conduct by a private individual would be tortious." *In re World Trade Ctr. Disaster Site Litig.,* 521 F.3d 169, 190 (2d Cir.2008) (internal citations removed).

The discretionary function exception applies "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States,* 214 F.3d 106, 109 (2d Cir.2000) (internal quotation marks omitted). Despite the exception, the Second Circuit has "repeatedly found the BOP at least potentially subject to negligence claims as a result of conduct by its employees that is contemplated by prison regulations." *McGowan v. United States*, 94 F. Supp. 3d 382, 392 (E.D.N.Y. 2015), *aff'd*, 825 F.3d 118 (2d Cir. 2016) (citing *Coulthurst,* 214 F.3d at 108).

In *McGowan*, the plaintiff, an inmate in the custody of the BOP, published an article on an internet newspaper while incarcerated. Prison officials punished Mr. McGowan by remanding him from a halfway house to the Special Housing Unit of a federal detention center because they believed that his actions were in violation of a BOP Program Statement prohibiting inmates from publishing under a byline. *Id.* These officials, however, did not know that the BOP had rescinded the Program Statement a year earlier. *Id.* Mr. McGowan sued, alleging FTCA claims of negligence and false imprisonment. The court dismissed his negligence claims, concluding that he could not rely "completely on the violation of the regulation as the sole basis for the existence of a duty and its

6

breach" without running "squarely into" the discretionary function exception and, therefore "the bar of sovereign immunity." *Id.* at 393 ("A breach of government regulations cannot be the sine qua non of a negligence claim under the FTCA because there is no private analogue—private individuals have no regulations.").

Plaintiffs, however, can maintain an FTCA claim against federal officials for negligence if the negligence alleged is "unrelated to any plausible policy objectives" and is therefore "outside of the scope of the discretionary function exception. *Coulthurst*, 214 F.3d at 111. In *Coulthurst*, a plaintiff sued the BOP after he was injured in the prison gym. *Id.* at 108. He alleged that officials had been "negligent" and "careless" and also referred to a prison manual that required officials to periodically examine the gym to "determine if the equipment is arranged in a safe manner and if participants use the equipment properly." *Id.* The Second Circuit held that, to the extent that plaintiff's claim "alleged an inadequately designed inspection policy and practice," it was barred by the discretionary function exception. *Id.* at 109. If, however, the plaintiff established that the negligence was "unrelated to any plausible policy objectives"—if he, for example, showed that an official, "motivated simply by laziness," negligently took "a smoke break rather than inspect the machines"—his claim would not be barred. *Id.* at 111.

Citing the *Coulthurst* decision, courts have allowed prisoners to allege that federal officials negligently transferred them to a different facility, despite the discretionary function exception, as long as the negligence does not arise out of a policy determination. *See, e.g. Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003) (denying dismissal of inmate's claim that prison officials had negligently transferred him into unit with a rival gang, which caused his injuries, because "as in *Coulthurst,* it is easy to imagine a scenario in which MCC officials behaved in a negligent fashion, but without making the types of discretionary judgments that the statutory exception was intended to exempt from liability. Perhaps the corrections officer monitoring the holdover unit at the time that the gang altercation broke out was simply asleep, for example. Or perhaps he left the unit unattended

in order to enjoy a cigarette or a snack."); *Hartman v. Holder*, No. 100-CV-6107-ENV-JMA, 2009 WL 792185, at *11 (E.D.N.Y. Mar. 23, 2009) (denying motion to dismiss plaintiff's claim because he "does not quibble with the BOP's discretion over whether actually to transfer [him] to another location at the MDC; his is a challenge, in part, to [an official's] failure simply to relay word of his danger … so as to enable the discretionary evaluation of his transfer request by the official entrusted with that judgment.").

In this case, like *Colthurst*, Mr. Mansa's Complaint could be read to state a claim for ordinary negligence that involves no prison policy determinations. Mr. Mansa merely alleges that "injuries [were] inflicted upon [him] by the negligence" of federal agents. Compl. ¶ 1. These agents, he alleges, negligently administered Mr. Mansa's drug test, causing his improper punishment and injury. Mr. Mansa does not use the "violation of the regulation as the sole basis for the existence of a duty and its breach." *McGowan*, 94 F. Supp. 3d at 392. Furthermore, unlike the claims in *McGowan*, Mr. Mansa's Complaint, when construed liberally, has a private analogue. *C.f. Williams v. Nat'l R.R. Passenger Corp.*, 16 F. Supp. 2d 178, 180 (D. Conn. 1998) (plaintiff stated a claim for negligence when he alleged that hospital "obtained and processed Williams's urine sample 'in a procedurally defective' and 'irregular manner.'"); *Tenerow v. Concentra Health Servs., Inc.*, No. CV085004011S, 2009 WL 2231789, at *3 (Conn. Super. Ct. June 24, 2009) (allowing claim for negligence in administration of agility test for employment purposes).

For the reasons stated above, the Court denies Defendant's motion to dismiss under Rule 12(b)(1) and exercises its jurisdiction to consider its motion to dismiss under Rule 12(b)(6).

### b. Dismissal under Rule 12(b)(6)

Defendant also seeks dismissal under Rule 12(b)(6), arguing that the "complaint fails to state a claim for false imprisonment, because Plaintiff was legally confined, and the BOP has the authority to transfer inmate into any correctional facility." Def.'s Mem., 7. Because Mr. Mansa has clarified

that he claims only common law negligence, the Court need not engage with this argument. Accordingly, Defendant's motion to dismiss under Rule 12(b)(6) is denied.

### c. Improper Service

In a footnote to its motion to dismiss, Defendant notes that "Rule 4(i) of the Federal Rules of Civil Procedure requires that a plaintiff suing the United States serve a copy of the summons and complaint by registered or certified mail to both the United States Attorney's Office for the district where the action is brought and the Attorney General of the United States in Washington, D.C." Def.'s Mem., n. 1; *see also* Fed. R. Civ. P. 4(i)(1)(B) ("To serve the United States, a party must send a copy of [summons and the complaint] by registered or certified mail to the Attorney General of the United States at Washington, D.C."). Defendant states that "Plaintiff served only the United States Attorney's Office." Def.'s Mem., n. 1. Defendant also notes that "the Bureau of Prisons has not been served." Def.'s Mem., 5. The Defendant does not invoke Rule 12(b)(5) or move to dismiss on this ground, but the court will consider this argument regardless.

Rule 4(i)(C) provides that "if the action challenges an order of a nonparty agency or officer of the United States," the plaintiff must "send a copy of [the summons and the complaint] by registered or certified mail to the agency or officer." Fed. R. Civ. P. 4(m); *see also Parisi v. United States*, No. 108-CV-606 LEK/DRH, 2009 WL 1851042, at *2 (N.D.N.Y. June 26, 2009) (requiring compliance with Rule 4(i)(C) when plaintiff's complaint stated "that the United States, through its agency (Bureau of Prisons), wrongfully and negligently breached duties owed to [the plaintiff]."). The docket contains record of a return of service from the United States of America, addressed to Hon. Loretta Lynch, dated April 27, 2016. *See* Return of Service, ECF No. 8-1. It does not, however, suggest that Mr. Mansa sent any type of notice to the Bureau of Prisons.

District courts "may exercise their discretion to grant extensions under Rule 4(m)," even "absent a showing of good cause." *Zapata v. City of N.Y.*, 502 F.3d 192, 193 (2d Cir. 2007). When determining whether to grant an extension instead of dismissing the case, the Court should consider

numerous factors, including whether "the defendant had actual notice of the claims prior to being served," whether the defendant "tried to conceal the defect in service," and whether the "defendant will be prejudiced if an extension is granted." *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999) (citing Advisory Committee Notes to Fed. R. Civ. P. 4(m)).

Defendant had notice of Mr. Mansa's claims and even moved to dismiss them. It has not articulated any prejudice from Mr. Mansa's failure to notify the BOP and has not pointed to any evidence of Mr. Mansa's concealment. Dismissal for improper service is not appropriate in this case. Accordingly, the Court extends the time period in Rule 4(i) and orders Mr. Mansa to effect service on the BOP within thirty days of this Order.

**IV.   Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is DENIED and Mr. Mansa is ORDERED to effect service on the Bureau of Prisons within thirty days of this Order.

SO ORDERED at Bridgeport, Connecticut this 30th day of March, 2017.

/s/ Victor Bolden_____

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE